# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EMISSIVE ENERGY CORPORATION, | ) | Case No. 1:09-CV-00567-S-DLM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *vs.* | ) | |
| | ) | |
| SPA-SIMRAD, INC. d/b/a SPA-DEFENSE d/b/a SPA TACTICAL d/b/a SOUTHERN PRECISION ARMORY, | ) | |
| | ) | |
| Defendant. | ) | |

## SPA-DEFENSE'S SUPPLEMENTAL BRIEF SUPPORTING ITS MOTION TO DISMISS AND RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF

Defendant Spa-Simrad, Inc. d/b/a Spa Defense, d/b/a Spa Tactical, d/b/a Southern Precision Armory ("Spa-Defense") submits this Supplemental Brief supporting its Motion to Dismiss Docket Nos. (DE) 7 and 11 and response to plaintiff Emissive Energy Corporation's "Supplemental Memorandum in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss." DE 21.

## A. THE COURT ONLY AUTHORIZED SUPPLEMENTAL BRIEFING ON GENERAL JURISDICTION AND PLAINTIFF FAILED TO CARRY ITS BURDEN ON THAT ISSUE

The Court only permitted supplemental briefing regarding general jurisdiction. DE 12 at 3 & n. 1 ("whether or not Spa-Defense does business in Rhode Island"). Plaintiff admits the Court's Order DE 12 requires it "to establish general jurisdiction by the preponderance of the evidence." DE 21 at 22. The Court authorized the parties to resolve a single conflict between deposition testimony that Spa-Defense "sells products in every state and provides training services in every state" – a general jurisdiction inquiry – and affidavit testimony from which the

Court concludes Mr. "Giorgio swears that Defendant has never sold any flashlights or provided any training in Rhode Island" – a specific or general jurisdiction inquiry.[1] DE 12 at 3. Plaintiff offers no argument or evidence that disturbs any specific jurisdiction component of the conflict. As such, specific jurisdiction, which was not contemplated by DE 12, should not have been raised again. Plaintiff's general jurisdiction arguments fail to carry its burden.

### 1. The Court Already Determined That This Case Unfairly Forces Out-of-State Defendant Spa-Defense to Litigation in this District, So the Court Required Plaintiff To Satisfy a Preponderance of the Evidence Standard

The Court applied a preponderance of the evidence standard because it "determine[d] that in the circumstances of [this] particular case it is unfair to force an out-of-state defendant to incur the expense and burden of a trial in the merits in the local forum…." DE 12 at 2. Plaintiff acknowledges this burden as to general jurisdiction on page 21 of DE 21.

### 2. Plaintiff Failed to Carry Its Burden to Prove General Jurisdiction Over Spa-Defense by a Preponderance of the Evidence And Identifies <u>No</u> Competent Evidence That Spa-Defense Does (Or Even Did) Business in Rhode Island

As the Court recognized in its Order, and as every single case cited by plaintiff recognizes, general jurisdiction depends upon Spa-Defense's contacts with the forum state. *See* DE 12; *see also Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually…."). The Supreme Court directs that ["random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King v. Rudkewicz*, 471 U.S. 462, 475 (1985); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

---

[1] In *Avocent Huntsville Corp. v. Aten Int'l Co.*, the Federal Circuit made clear that specific jurisdiction in patent litigation "is relatively easily discerned from the nature and extent of the commercialization of the accused product or services by the defendant in the forum." 552 F.3d 1324, 1332 (Fed. Cir. 2008) (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)). Specific jurisdiction is addressed below.

Plaintiff ignores this precedent by arguing that precisely these kinds of *alleged* contacts confer personal jurisdiction over Spa-Defense. Plaintiff's only "new evidence" consists of four isolated, eight-year-old "Quotation" sheets. DE 21 Ex. 12. Plaintiff failed to establish, however, that any of those papers ever reached Rhode Island. Nor did plaintiff inform the court of that failure of proof.

More specifically, in response to plaintiff's jurisdictional discovery requests, Spa-Defense conducted a thorough and reasonable search that it believed uncovered any possible business contacts it had with Rhode Island. Ex. 1, Transcript of April 19, 2010 Deposition of Anthony Giorgio, at 10-12, 82-85, 148. Spa-Defense found four "Quotations" it prepared on December 4, 2003, May 20, 2002 (two), and April 8, 2002. DE 21 Ex. 12. The eight-plus year old Quotation sheets identified three Rhode Island police departments. *Id.*

As part of its jurisdictional discovery efforts, plaintiff deposed Spa-Defense's President, Anthony Giorgio, personally, and subpoenaed each Rhode Island police department. Exs. 1, 2; DE 21 Ex. 2. Mr. Giorgio testified that he did not prepare the outdated Quotations and did not know who did, that Spa-Defense may not have sent any of the Quotations to Rhode Island, that SPA-Defense has never sold products to anyone in Rhode Island, and that none of the Quotations listed information about the accused products in this case. Ex. 1 at 43-44, 56-57, 83-84, 87-88, 149. He also testified about a search by James Olsen, a Spa-Defense employee, that confirmed Spa-Defense had no records indicating the Quotations were ever dispatched. *Id.* at 82. Spa-Defense's sworn Interrogatory Response Nos. 10 and 13 explains Spa-Defense does not know whether the Quotations were ever sent. Ex. 3. Plaintiff's counsel asked no questions about that Response during Mr. Giorgio's deposition. Nor did plaintiff include any information from the subpoenaed police departments, which supports a conclusion that they never reached Rhode

Island.[2]  At a minimum, the lack of records demonstrates how random and attenuated these unproved contacts are.

The weight of the evidence here suggests the "Quotation" papers never actually reached Rhode Island.  Plaintiff's repeated argument that the papers were "sent" (*e.g.* DE 21 at 8) depends upon a faulty assumption – no evidence exists to suggest they were sent.

Besides these unproved, random or attenuated Quotation sheets, plaintiff only argues that Spa-Defense's passive website confers general jurisdiction.  DE 21 at 23.[3]  That argument has been digested in earlier briefs and at the first hearing; a passive website does not create jurisdiction in this District.  DE 11 at 7-8 (citing *Swarovski Optic N. Am. Ltd. v. Euro Optics, Inc.*, C.A. No. 03-090-ML (D.R.I. Aug. 25, 2003)).  Plaintiff's latest brief adds new attorney argument that Spa-Defense "offers for sale the accused products" at its website.  Compare DE 21 at 22-23 (unsupported "offers for sale" argument) with DE 10 at 3 (no mention of offers for sale regarding Spa-Defense's website).  Plaintiff cites no evidence to support that attorney argument. None exists.[4]

The unproved Quotation sheets and the passive website fail to meet plaintiff's burden to prove Spa-Defense does business in Rhode Island – "a fact which is highly significant to the instant Motion."  DE 12.  That is probably why plaintiff spent just one page of its 25-page "spectacular" on the issue.  See DE 21 at 8 (last three lines of first full paragraph), 22-23 (Section

---

[2] Defense counsel requested plaintiff's counsel advise of the response.  Ex. 4.

[3] Notably, plaintiff does not argue any other evidence except the Quotations and website supports a finding of general jurisdiction.

[4] Indeed, Spa-Defense makes very specialized products for military and law enforcement available in Florida.  See www.spa-defense.com; Ex. 1 at 32, 41-42, 72.  It would not make sense that these types of products would be offered for sale over the Internet.  They are not.  As to the accused products, however, they are not available on the website.  If they were, plaintiff would undoubtedly have attached excerpts of the website as it did for the passive grant information already addressed in DE 11 at 7-8.  Importantly,

II).  It also explains why plaintiff mischaracterizes Spa-Defense's website as offering for sale accused products and misleads the Court by assuming (instead of proving) the Quotation sheets were "sent to" Rhode Island for "soliciting business" or mean "SPA does market its products in Rhode Island." DE 21 at 8, 23.  In fact, *if* the Quotations were sent, they amounted to no more than providing information that someone *might* have sought from Spa-Defense in Florida about products Spa-Defense makes available in Florida.  Ex. 1 at 73, 75-76.  Either way, since general jurisdiction in this case depends upon probabilities, not possibilities (DE 12), plaintiff has failed to carry its burden.

> ### 3. *Even If Plaintiff's General Jurisdiction Arguments Somehow Carried Its Burden to Prove Minimum Contacts With Rhode Island, Forcing Spa-Defense to Defend Itself In This District Would Not Comport With Notions of Fair Play and Substantial Justice, Would Be Unreasonable, And Would Unfairly Burden Spa-Defense*

Plaintiff argues that Spa-Defense "has not made a sufficient showing that this Court's assertion of personal jurisdiction is unreasonable."  DE 21 at 19.  Spa-Defense disagrees – but no such showing is necessary, since plaintiff failed to prove minimum contacts sufficient to confer jurisdiction here.

Should the Court conclude that plaintiff's general jurisdiction "evidence" somehow demonstrates Spa-Defense has constitutional minimum contacts with Rhode Island, the personal jurisdiction inquiry does not end.  The "requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if [Spa-Defense] has purposefully engaged in forum activities" (which has not been proven).  *Burger King*, 471 U.S. at 477-78.  Plaintiff correctly lists five factors relevant to the inquiry at page 20 of DE 21.  But plaintiff's analysis must fail.  Balancing the factors clearly favors Spa-Defense.

---

plaintiff did not advance this false argument in its original opposition.  See DE 10 at 3.

First, the burden on defendant factor heavily favors Spa-Defense. Spa-Defense is a small, Florida corporation. Its few employees are in Florida; its only officer is there; its lawyers are there; its business is there; its products are made there; its shipments are received there. Ex. 1 at 7, 32, 41-42, 148, 152-153; DE 21 Exs. 1, 6, 7. Spa-Defense only would have expected to be sued based on its business in Florida. *Id.* at 154. Should Spa-Defense be forced to defend the case by plaintiff in Rhode Island, Spa-Defense will likely go out of business. Ex. 1 at 148, 160, 162-163. That is a substantial burden. Plaintiff's arguments about a litigation "war chest" of a few hundred thousand dollars (DE 21 at 20) are irrelevant. Patent cases cost millions of dollars to defend. For example, the American Intellectual Property Law Association (www.aipla.org) 2009 estimates "median litigation costs" for patent infringement litigation with $1,000,000 to $25,000,000 at risk is $2,500,000. Ex. 5. Plaintiff apparently believes the risk is in the middle of this range. See, *e.g.*, DE 21 at 21 (alleging Spa-Defense "generated millions in revenue"). Plaintiff's claim that a few hundred thousand dollars eliminates Spa-Defense's burden lacks credibility. Plaintiff's argument that Spa-Defense "agreed to arbitrate its dispute with NovaTac in California, a more distant forum than Rhode Island" (DE 21 at 20) actually cuts against plaintiff on this factor. To be sure, Spa-Defense cannot afford *two* foreign proceedings. The California proceeding is dictated by the terms of the California Agreement. See DE 21 Ex. 1 at ¶¶ 10.1-10.2. This Rhode Island proceeding did not arise out of that Agreement. See Section B, below; DE 11 at 4-7. This factor unquestionably favors Spa-Defense.

Second, the interests of the forum state factor breaks even. Spa-Defense does not dispute that every state has an interest in seeing its residents' intellectual property rights enforced. But, they should not be enforced against non-resident defendants that have no contacts with the forum. That is what plaintiff seeks to do here.

Third, the plaintiff's interest in obtaining relief favors Spa-Defense. Plaintiff's arguments on unreasonableness are noticeably silent on this factor. See DE 10 at 7-9; DE 21 at 19-21. Since plaintiff can obtain relief in Florida but not in Rhode Island (where Spa-Defense has insufficient contacts), this factor does not favor plaintiff.

Fourth, the interstate judicial system's interest in obtaining the most efficient resolution of controversies factor favors Spa-Defense. Plaintiff incorrectly argues this factor supports it because "this litigation is inclusive of the Accused Products asserted in the NovaTac litigation" and "[n]ew attorneys and a new court would be forced to expend resources adjudicating claims [sic] constructions and invalidity and infringement contentions concerning the same four patents-in-suit." DE 21 at 21. Plaintiff ignores that principles of issue preclusion will bind it to all matters decided in its case against NovaTac and that SPA-Defense will be able to defend this case anew. Plaintiff also ignores that SPA-Defense has Florida counsel and plaintiff's counsel had no trouble appearing in Florida for depositions and to defend against Spa-Defense's motion to quash a Rule 45 subpoena in the NovaTac litigation. See Ex. 1; Ex. 10. At best, this factor is a wash. But given Florida's strong interest in providing a forum for its residents to defend themselves when they do not have contacts in foreign jurisdictions, Spa-Defense respectfully submits this factor favors it.

The fifth factor, "the interests of the states in furthering their social policies," is not implicated in a patent infringement action – a matter of Federal law. *See Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1352 (Fed. Cir. 2003). The fact that plaintiff argues "No overriding social policy suggests another forum, and judicial economy will be ill-served…in another district" (DE 21 at 21) reflects a failure to grasp the nature of an unreasonableness inquiry in the context of determining personal jurisdiction. That failure infects plaintiff's unreasonableness

analysis, explaining why plaintiff incorrectly concluded that "all of the *Gestalt* factors" favor plaintiff. DE 21 at 21. They do not.

Overall, Spa-Defense has no proven contact with Rhode Island, is located outside Rhode Island, and would likely go out of business if it had to defend this case here. It would be unreasonable to force Spa-Defense into this position based on four unproven contacts from nearly a decade ago.

### 4. Conclusion On General Jurisdiction

Plaintiff has not proved Spa-Defense does business in Rhode Island. Even if plaintiff's alleged contacts had been proved, they amount to random, fortuitous, or attenuated contacts. Consequently, they cannot amount to minimum contacts for purposes of due process. Even if they did, maintaining jurisdiction over Spa-Defense based on those contacts would be unreasonable, since the *Gestalt* factors clearly favor Spa-Defense here.

Since the Court concluded that only general jurisdiction should have been the subject of the supplemental briefing, the Court's further analysis can end here. Since plaintiff went outside the scope of DE 12, however, Spa-Defense addresses the rest of plaintiff's supplemental paper in Section B.

### B. PLAINTIFF'S SPECIFIC JURISDICTION ARGUMENTS EXCEED THE SCOPE OF DE 12 AND, IF CONSIDERED, FAIL TO CARRY PLAINTIFF'S BURDEN OR CONTRAVENE PRECEDENT OR PERSUASIVE AUTHORITY

Apparently recognizing the deficiency of its case for general jurisdiction, plaintiff spends over 90% of its second 25-page brief on specific jurisdiction arguments. Plaintiff (a) wishes to reduce its burden of proof that is now law of the case, (b) regurgitates the same arguments presented in its original opposition, and (c) carps that it did not receive discovery.

Specific jurisdiction is outside the scope of DE 12. Even if the Court considers it,

plaintiff cannot reduce the applicable burden that is now law of the case.  None of plaintiff's

regurgitated arguments is compelling; nor do they satisfy plaintiff's burden of proof.  Most of

them run afoul of other precedent or persuasive authority that establishes plaintiff's attorney

arguments fail to confer personal jurisdiction.  As to discovery, plaintiff had any and all non-

privileged discovery – albeit irrelevant – and a full and fair opportunity to test Spa-Defense with

that discovery, eliminating any possible prejudice from Spa-Defense's reasonable relevance

position.  Plaintiff's argument now that there has been some discovery deprivation is either a red

herring or disingenuous.  That appears to be why plaintiff failed to properly seek discovery

sanctions by first moving to compel Spa-Defense's production.

    1. ***Plaintiff's Specific Jurisdiction Arguments Are Outside the Scope of DE 12 And Regurgitate Arguments Previously Presented in Its Original Opposition – Arguments That Failed To Establish a* Prima Facie *Case of Specific Jurisdiction***

Despite plaintiff's admission that DE 12 required it to "establish general jurisdiction by

the preponderance of the evidence" (DE 12 at 22), plaintiff spends nearly all of its brief

regurgitating the same specific jurisdiction arguments presented in its original opposition.

Compare DE 21 with DE 10.  Since specific jurisdiction was not within the ambit of

jurisdictional resolution directed by DE 12, to revisit it, plaintiff should have moved for

reconsideration.  Having failed to do so, all of plaintiff's arguments directed to specific

jurisdiction should not be considered.

Should the Court nevertheless consider the same specific jurisdiction arguments,

plaintiff's arguments must fail.  They add no new evidence.  Since these same arguments failed

to meet the *prima facie* standard previously, they cannot now meet the preponderance standard

imposed by DE 12.

Since plaintiff regurgitated the same arguments, however, Spa-Defense is compelled to

address them in their present form.  First, though, we address plaintiff's ill-fated attempt to reduce its burden.

### 2. *Plaintiff Would Have to Prove Specific Jurisdiction By a Preponderance of the Evidence*

In an attempt to advance, or perhaps owing to weaknesses in, its jurisdictional positions, plaintiff asks the Court to lower plaintiff's burden of proof for specific jurisdiction.[5]  Plaintiff requests to have a *prima facie* standard reinstated.  DE 21 at 11-12.  In DE 12, "the Court concludes that utilization of the *prima facie* standard would be unfair to Spa-Defense."  Should the Court permit plaintiff to re-make its identical specific jurisdiction arguments, the only proper standard is a preponderance – that standard presently constitutes law of the case.  *See* DE 12. Had plaintiff wanted to change that law, it should have sought reconsideration of DE 12.  Having failed to do so, the Court should reject plaintiff's request for a lower burden.

### 3. *Plaintiff's Misguided Specific Jurisdiction Arguments Fail to Address Commercialization in the Forum Or Activities Directed at Residents of the Forum, Making them Irrelevant And Incapable of Carrying Plaintiff's Burden*

To meet its purported burden to prove specific jurisdiction by a preponderance of the evidence, plaintiff identifies six items:

> (1) that the Amendment [to a supply agreement between citizens of other states for supply of goods between other states] was drafted and negotiated at least in part, in Rhode Island;
>
> (2) that SPA executed the Amendment in response to the Rhode Island Litigation [between plaintiff and a different company];
>
> (3) SPA used the [different] Rhode Island Litigation to extract contract terms from NovaTac [the different company in the other suit];
>
> (4) SPA then operated under that Amendment to sell tens of thousands of Accused Products and generated millions in revenue;
>
> (5) the sale of those products is causing [plaintiff] harm in Rhode Island; and

---

[5] Plaintiff did not argue the lower standard for general jurisdiction, only specific jurisdiction.  See DE 21 at 22.

(6) SPA's web site offers for sale the accused products and contains
information on funding from a Rhode Island agency.

DE 21 at 21-22.

None of items (1)-(6) has to do with commercialization of accused products in the forum.
In *Avocent*, the Federal Circuit made clear that, in patent litigation, "the [specific] jurisdictional
inquiry is relatively easily discerned from the nature and extent of the commercialization of the
accused product or services by the defendant in the forum." 552 F.3d at 1332 (citing *Red Wing
Shoe Co.*, 148 F.3d at 1360.) None of plaintiff's items (1)-(6) relates to accused products. Thus,
under *Avocent* and *Red Wing Shoe*, plaintiff's jurisdiction arguments lack merit and, even if
relevant[6], certainly cannot meet a preponderance standard.

Plaintiff's reliance on *Avocent* (DE 21 at 12) is strangely misplaced. In *Avocent*, the
Federal Circuit affirmed the District Court's grant of defendant's motion to dismiss. Yet the facts
were *stronger* in that case than the present one. There, the declaratory judgment defendant
activities included sending "cease and desist" letters to residents of the forum, from which letters
the action arose. 552 F.3d at 1328. None of plaintiff's items (1)-(6) reaches this level. Applying
*Avocent* to plaintiff's specific jurisdiction arguments, therefore, compels a finding that no
personal jurisdiction exists.

Further, none of items (1)-(6) relates to Spa-Defense activities purposefully directed to
residents of the forum. "To establish specific jurisdiction, a plaintiff must demonstrate that 'the
defendant has **'purposefully directed' his activities at residents of the forum**, *Keeton v.
Hustler Magazine, Inc.*, [465 U.S. 770, 774] (1984), and the litigation results from the alleged
injuries that 'arise out of or relate to' those activities, *Helicopteros* [*Nacionales de Columbi, S.A.*

---

[6] As discussed more fully below, Spa-Defense's objection to spending resources to respond to discovery
of irrelevant issues that do not deal with contacts with the forum is perfectly well-placed. Plaintiff's

*v. Hall*, 466 U.S. 408, 414 (1984)]." *Avocent*, 552 F.3d at 1330 (quoting *Burger King*, 471 U.S. at 472-73). Since none of plaintiff's items (1)-(6) establishes any Spa-Defense activity purposefully directed at a resident of Rhode Island, items (1)-(6) are irrelevant to the issue of specific jurisdiction. Even if they constituted evidence, they are not sufficiently probative to meet plaintiff's burden of proof.

Although all six of plaintiff's purported specific jurisdiction items fail to address the proper inquires, each also has specific deficiencies.

### a. The Dealer Agreement (and Amendment) Are Between California and Florida Companies for Supply of Products from California to Florida And Is Not Directed at Rhode Island (Items 1-4)

The parties do not dispute that Spa-Defense is a Florida corporation with its principal place of business in Florida. That is, Spa-Defense is a citizen of Florida for jurisdictional purposes. According to the Agreement, NovaTac is a Delaware corporation with its principal place of business in California. DE 21 Ex. 1 at 1. NovaTac is therefore a citizen of California or Delaware.

The Agreement between these two non-residents "shall be governed as to all matters, including validity, construction and performance, by the laws of the State of California…and [is] to be performed entirely within California between California residents." *Id.* at ¶ 10.3. Under the terms of the Agreement, NovaTac, Inc. supplies products to Spa-Defense. DE 21 Exs. 1, 7.[7] NovaTac does so by sending the products to Florida, where Spa-Defense assembled the NovaTac products into kits sold to the U.S. Army at Fort Belvoir, Virginia, but never in Rhode Island. See DE 21 Ex. 8; DE 7-3 at ¶¶ 5, 8; Ex. 11 at 48, 57; Declaration of Joe Mintz, President of

---

arguments to the contrary (See DE 21 at 23-24) lack any basis in law.

[7] DE 21 Ex. 7 also was DE 10 Ex. 1.

NovaTac, Inc. (filed contemporaneously with this Supplemental Brief and referred to here as "Mintz Decl.") at ¶ 4; Ex. 1 at 71-72. In fact, Spa-Defense does business in Florida "the old-fashioned way" – former customers call back. Ex. 1 at 33, 153.

The Amendment has no affect on the California choice of law provision. DE 21 Ex. 7. In fact, all it does is simply to modify the original Agreement. DE 21 Ex. 7; Mintz Decl. at ¶ 3; *see* generally DE 21 at 3-22 (identifying the modifications). The Amendment includes an indemnification for NovaTac's supply of products from California to Spa-Defense in Florida. DE 21 Ex. 7. The purpose of the indemnification provision relates to the supplied products. Ex. 1 at 152; Mintz Decl. at ¶3. Clearly, the Amendment is not "expressly directed" at Rhode Island, as plaintiff argues.

Spa-Defense incorporates its prior arguments and evidence on this point in its Reply. DE 11 at 4-7. As new evidence, Spa-Defense simply states that NovaTac's President who signed the Dealer Agreement and Amendment (See DE 21 Exs. 1, 7) declares that "At no time has NovaTac considered the Amendment or any other agreements with SPA to be directed – expressly or impliedly – at the State of Rhode Island." Mintz Decl. at ¶ 3. As both the agreements and Mr. Mintz make clear, execution occurred in California or Florida. In fact, plaintiff has conducted depositions of three NovaTac personnel, including Mr. Mintz (*id.* at ¶ 9). Apparently, their testimony was consistent with Mr. Mintz's Declaration and Spa-Defense's arguments and evidence in DE 11. Otherwise, plaintiff surely would have included excerpts in its brief. Since plaintiff has not identified any other information from NovaTac (which it clearly did not have a concern about using in this case), it is reasonable to conclude that Ex. 6 is all it has.[8]

---

[8] Plaintiff's complaints about not having internal Spa-Defense correspondence are a straw man. See, *e.g.*, DE 21 at 4 & n. 1. Spa-Defense's internal correspondence, which would have gone between Spa-Defense and its attorneys, unquestionably are privileged. In other words, plaintiff had everything there is

As to the indemnification provision, plaintiff's arguments for specific jurisdiction fall short. Spa-Defense incorporates its arguments on this topic in its Reply. DE 11 at 4-7. Spa-Defense further submits that an indemnity agreement between two non-residents, even when related to in-forum litigation, is insufficient to grant the forum state personal jurisdiction. *See, e.g.*, *Falic v. Smith,* 884 F. Supp. 862, 867 (S.D.N.Y. 1995); *United Phillippine Lines, Inc. v. Metalsrussia Corp., Ltd.*, 1997 U.S. Dist. Lexis 5616, at *9 (S.D.N.Y. 1997); *Ferrante Equip. Co. v. Lasker Godman Corp.*, 26 N.Y.2d 280, 284 (1970). Since this rule seems rational and persuasive, Spa-Defense's counsel advised plaintiff's counsel of this law and an inability to locate anything contrary – Spa-Defense even requested plaintiff's authority that supports its contrary and novel interpretation of the law. See Ex. 9. Plaintiff never responded. Nor is any new authority presented in its brief. Apparently, none exists. Spa-Defense respectfully submits that Rhode Island authority suggests Rhode Island courts would adopt the New York court's view on this apparent issue of first impression here. For example, a court in this District found no personal jurisdiction based on a contract where "[n]o Rhode Island resident signed [leases,] none of the leased property is in Rhode Island [and] Rhode Island law does not govern any of the leases." *CVS Corp. v. Taubman Ctrs., Inc.*, 225 F. Supp. 2d 120, 127 (D.R.I. 2002) That is essentially this contract. This contract and its indemnification provision – all of which is controlled by and performed under California law, has nothing to do with Rhode Island.

### b. *The Amendment Negotiations Fortuitously Result from Unilateral Activities of Other Entities, Namely Plaintiff And NovaTac (Items 1-4)*

Plaintiff sued NovaTac in Rhode Island. Case No. 09-13-S. That action was indisputably

---

and either chose not to use it or, more likely, does not have anything useful. Furthermore, plaintiff apparently has been sitting on the information for months – presenting argument on it at the March 4, 2010 hearing and presumably having withheld it during earlier briefing. See, *e.g.*, DE 21 Ex. 9 at 27:8-23 (incorrectly attributed on the transcript to Mr. Weiner).

unilateral.  Spa-Defense certainly had nothing to do with it.  NovaTac elected to hire a Rhode Island attorney to act as its counsel regarding the case and then used the same attorney for a negotiation with Floridian Spa-Defense.  Mintz Decl. at ¶¶ 5, 8.  NovaTac's actions were indisputably unilateral.  Spa-Defense certainly had nothing to do with them.  The unilateral activity of third parties, like NovaTac, or parties, like plaintiff, cannot create jurisdiction over Spa-Defense.  *See Burger King*, 471 U.S. at 475; *see also Hanson*, 357 U.S. at 253.  This precedent applies here.  Subjecting Spa-Defense to jurisdiction based on plaintiff's or NovaTac's unilateral activities cannot satisfy the requirement of contact with Rhode Island.

As plaintiff points out, in March 2009, Spa-Defense learned about plaintiff's suit against NovaTac.  Spa-Defense had no information about that case, so Spa-Defense's attorney, Jeffrey Wachs, Esq., asked Mr. Mintz – the President of its California supplier, NovaTac, who executed the Dealer Agreement – for information about the case.  See DE 21 Ex. 3; see also DE 21 Ex. 5 (Attorney Wachs' explaining learning of the existence of the lawsuit and not having information); Ex. 1 at 112, 154 testifying that prior to Amendment, Spa-Defense did not know what the accused products were).  NovaTac had not challenged personal jurisdiction.[9] NovaTac's lead counsel at the time was Jeffrey Techentin, of the Adler, Pollock & Sheehan, P.C. law firm in Providence, Rhode Island.[10]

Not surprisingly, Mr. Mintz directed NovaTac's chosen Attorney Techentin to contact Spa-Defense's Attorney Wachs to provide information about the case.  See DE 21 Ex. 3.  On March 9, 2009, NovaTac's attorney Techentin emailed Attorney Wachs and Mr. Mintz to close

---

[9] Based on the Docket for Case No. 09-13-S, NovaTac did not challenge personal jurisdiction in Rhode Island.

[10] NovaTac's present lead counsel from San Diego, California did not appear in the action until much later.  Had it, NovaTac would have undoubtedly referred Florida Attorney Wachs to California counsel. But the Amendment still would have had nothing to do with Rhode Island.

the loop. DE 21 Ex. 4 (12:19 p.m. email). As this exchange makes clear, Attorney Techentin acted as an agent for the California company and nothing more.

NovaTac's agent, Attorney Techentin, subsequently negotiated the Amendment with Spa-Defense's counsel Attorney Wachs. See DE 21 Ex. 6, DE 21 at 14 & n.6, Mintz Decl. at ¶ 8. The negotiation simply and unquestionably related to an Amendment of the California Agreement. See DE 21 Ex. 6 at Bates Nos. NOV00245, NOV00774-75, NOV00390, NOV00391, NOV00758, NOV00756-57, NOV00754-55, NOV00752-53, NOV00745; Mintz Decl. at ¶ 3.[11] Both parties to the contract recognize it does not directly concern Rhode Island. DE 11 at 4-7; Mintz Decl. at ¶ 8. The result of the negotiation between the California company and the Florida company was simply the modification of the California-controlled Dealer Agreement. DE 21 Exs. 1, 7; Mintz Decl. at ¶ 3. The terms of the Dealer Agreement were modified by the Amendment – but that is why contracts are amended. The negotiations were between Californians and Floridians for a contract controlled, executed, and performed in California and related to products supplied from California to Florida to Virginia. They do not create any contacts, let alone specific jurisdiction contacts.[12] At best, these attenuated contacts

---

[11] Plaintiff calls DE 21 Ex. 6 "select email correspondence and amendments exchanged between SPA and NovaTac." DE 21 at 5. Spa-Defense does not understand how the "selections" were assembled, since the production number order of pages is not consecutive and attachments do not appear to be included. We note that NovaTac has agreed to provide Spa-defense access to all NovaTac production documents; plaintiff has not provided the entire set of these documents; NovaTac confirmed it produced the Spa-Defense and NovaTac correspondence regarding the amendment; and Spa-Defense's internal communications are privileged. In other words, this exhibit has little probative value without completeness. Spa-Defense therefore objects to its consideration under Fed. R. Evid. 106.

[12] Plaintiff essentially argues that when one nonresident picks a Rhode Island attorney knowledgeable in one matter to negotiate regarding another matter, whomever that Rhode Island attorney negotiates with on the other nonresident's behalf is subject to jurisdiction here. That theory is constitutionally unsound. NovaTac certainly did not intend for this to happen. Mintz Decl. at ¶ 8. Besides, finding jurisdiction on this issue would result in a chilling effect on the selection of Rhode Island counsel by citizens of other states if that selection will result in jurisdiction. Carried to its logical endpoint, finding jurisdiction based on the negotiations of a Rhode Island attorneys with foreign companies may even have a chilling affect

are fortuitously the result of unilateral actions of others and should not be attributable to Spa-Defense for purposes of exercising jurisdiction over Spa-Defense. *See Hanson*, 357 U.S. at 253; *Burger King*, 471 U.S. at 475.

### c. Spa-Defense Is Not Amenable to Suit in Rhode Island Based on Out of State Sales Activities of Accused Products (Items 4-5)

"Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the [Supreme] Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King*, 471 U.S. at 474 (footnote omitted). In short, where no connection to the forum exists, no personal jurisdiction exists. *See id.* at 474 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

### d. The March 2009 Order from the U.S. Army (Through Amron International) Was Not Delayed Because of the Amendment (Items 4-5)

Although immaterial, plaintiff argues Spa-Defense "possibly" delayed the March 2009 Amron International order of accused products. DE 21 at 6, 13-14, 19. To do so, plaintiff mischaracterizes and ignores Mr. Giorgio's testimony and ignores irrelevant evidence cited in its brief. Specifically, from the beginning, Spa-Defense's Attorney Wachs explained to NovaTac that an "award of a contract from the US army [was] anticipated to be received any day from Amron [] the primary purchaser to my client SPA." DE 21 Ex. 5. Mr. Giorgio testified about the Amendment and the Amron order that "I don't believe one has anything to do with the other." DE 21 Ex. 2 at 123-124. In fact, when asked "Isn't it true, sir, that you did not want to receive a purchase order from Amron for those 15,000 units until after you had a signed deal with NovaTac that is reflected in Exhibit 7 [the Amendment]?" Mr. Giorgio responded "I don't

on U.S. commerce when foreign companies do not negotiate if their partners select Rhode Island counsel

believe that is accurate." *Id*. at 124.[13]

### e.   *Spa-Defense's Passive Website Cannot Confer Specific Jurisdiction (Item 6)*

As explained in Section A-2, above, plaintiff mischaracterizes Spa-Defense's passive

website that has nothing to do with the accused products and cannot, therefore, confer personal

jurisdiction in this District.

### 4.   *Even If Plaintiff's General Jurisdiction Arguments Somehow Carried Its Burden to Prove Minimum Contacts With Rhode Island, Forcing Spa-Defense to Defend Itself In This District Would Not Comport With Notions of Fair Play and Substantial Justice, Would Be Unreasonable, And Would Unfairly Burden Spa-Defense*

The same unreasonableness inquiry applied to general jurisdiction applies to specific

jurisdiction.  As explained in Section A-3, above, it would be unreasonable to force Spa-Defense

to defend suit in Rhode Island.

### 5.   *Plaintiff Failed to Conduct Any Examination on the NovaTac Discovery And Its Arguments Based On That Discovery Should Be Disregarded*

Plaintiff's arguments about the meaning of the NovaTac discovery and Spa-Defense's

refusal to produce what plaintiff already had strain credulity.  To begin with, NovaTac produced

to plaintiff all the draft amendments and correspondence.  Mintz Decl. at ¶ 6.  Plaintiff does not

argue that production is not complete.  Plaintiff admits "SPA's counsel allowed examination of

Mr. Giorgio of these emails and addenda [sic: draft amendments?] produced by NovaTac…" that

plaintiff marked as Ex. 6 to its brief.  DE 21 at 4 n.1.  Plaintiff's counsel elected not to ask a

single question about any of the correspondence or draft amendments, despite that they had been

---

to negotiate such contracts.

[13] Plaintiff's claims that Mr. Giorgio responded "I don't remember" and "Anything is possible" disingenuously reflect an initial response followed by a series of identical questions that ended with plaintiff's counsel begging for speculation: "But it may be accurate?" Mr. Giorgio, clearly frustrated with answering the same question several times, responded "Anything is possible."  See DE 21 Ex. 2 at 123-124.  Spa-Defense respectfully submits that this nearly five hour long deposition far exceeded the scope of DE 12 and bordered on abusive.

copied to Spa-Defense. Nor does plaintiff cite any testimony about DE 21 Ex. 6 by any of the three NovaTac witnesses it deposed in its co-pending case against NovaTac. See Mintz Decl. at ¶ 9 (stating three NovaTac personnel have been deposed). As a result, plaintiff offers no actual evidence from Spa-Defense and its Ex. 6 is not authenticated or the subject of proper foundation except, if the evidentiary problems are disregarded, the emails themselves. All statements outside the four corners of the emails of DE 21 Ex. 6 constitute attorney argument, not facts. The attorney argument cannot be considered evidence, however, and are incapable of carrying plaintiff's burden. Also, as explained above, the documents themselves do not constitute business contacts with Rhode Island residents or commercialization of the accused products in this forum. So they are irrelevant.

### 6. *Spa-Defense Has Not Engaged in Any Discovery Misconduct*

Once again, DE 12 and every single court decision cited by plaintiff recognizes that jurisdiction depends upon Spa-Defense's contacts with the forum state. In this regard, the specific jurisdiction inquiry in a patent case is relatively simple and depends on sales of the accused products or services in the forum. *Avocent*, *supra*. Plaintiff has not even alleged such conduct in either of its briefs. None of the other discovery sought by plaintiff is relevant on the issue of jurisdiction. So Spa-Defense's relevance position is reasonable. Plaintiff's arguments to the contrary are not well-founded in the law. When Spa-Defense alerted plaintiff of this concern (Ex. 9), plaintiff did not disagree.

#### a. *Plaintiff Does Not Argue General Jurisdictional Discovery Is Incomplete*

Plaintiff does not argue that Spa-Defense did not produce its general jurisdiction discovery. Nor can it. Mr. Giorgio testified that his document search covered any possible Rhode Island contacts Spa-Defense might have had records of. Ex. 1 at 13, 148. Spa-Defense's

counsel conducted the only follow-up search sought by defendant of general jurisdiction information and reported none existed to plaintiff's counsel. Ex. 6. Plaintiff may be disappointed that the search resulted in "a total of 13 pages of documents…." DE 21 at 23.[14] But that disappointment cannot reasonably or fairly be translated into discovery misconduct. Rather, it demonstrates why it would not comport with notions of fair play and substantial justice to permit this case to go forward against Spa-Defense in this District.

### b. *Plaintiff's Arguments about Specific Jurisdictional Discovery Ignore That The Sought-After But Allegedly-Withheld Discovery Is Outside the Scope of DE 12, Is Irrelevant, Does Not Prejudice Plaintiff, And Was Not Properly Pursued For Purposes of Sanctions*

Plaintiff's after-thought complaint about Spa-Defense's discovery efforts appears to be that: (a) "SPA produced no emails and no drafts of the Amendment" and "refused to answer Interrogatories or provide documents concerning its negotiation of the Amendment"; and (b) "Mr. Giorgio obstructed the inquiry concerning SPA's contacts with Rhode Island by claiming that he 'did not know' or 'did not remember' in response to over 100 questions at the deposition." DE 21 at 23-24. Initially, since general jurisdiction alone was authorized by DE 12, these arguments may be disregarded in their entirety. Regardless, however, neither argument is compelling.

Plaintiff's email/amendment discovery argument is misplaced for three reasons explained in Section B, above. In summary, email/amendment discovery: (a) does not relate to Spa-Defense's contacts with Rhode Island, since they are not purposefully directed at residents of the forum and do not result from commercialization of the accused product in the forum of; (b)

---

[14] Spa-Defense searched its databases for Rhode Island vendors and other possible contacts and produced print outs of the results. They are blank pages, since Spa-Defense has no such contacts. See, *e.g.*, Ex. 7. Mr. Giorgio's testimony confirmed the nature of these searches and the lack of any such contacts. See, *e.g.*, Ex. 1 at 65-66. Plaintiff, of course, omitted these and the other empty results from its new evidence.

results exclusively from the unilateral acts of others – namely plaintiff and NovaTac; or (c) depends upon an indemnification provision between foreign companies for out-of-state supply of goods that should not be used to find jurisdiction, even if there is in-forum litigation. As such, this information is irrelevant and was properly not the subject of unnecessary, burdensome searching by Spa-Defense.[15]

Even if the Court concluded that Spa-Defense should have produced this information, plaintiff has not been prejudiced. Plaintiff admits that NovaTac produced the information and "SPA's counsel allowed examination of Mr. Giorgio of these emails and addenda [sic: draft amendments] produced by NovaTac in the Rhode Island Litigation" between plaintiff and NovaTac. DE 21 at 4 n.1. NovaTac confirms the production. Mintz Decl. at ¶ 6. Plaintiff does not argue that NovaTac's document production was not complete. See generally DE 21. As to Spa-Defense's internal correspondence regarding the Amendment, the attorney-client privilege clearly applies, since all of the relevant communications were between Spa-Defense and its counsel that negotiated with NovaTac's counsel. Accord DE 21 Ex. 6 (showing negotiation conducted with Florida Attorney Wachs, who would have communicated with Spa-Defense on the subject); see also *supra* n.11. Thus, plaintiff has all the discovery it could possibly have gotten from Spa-Defense and plaintiff has only itself to blame for not using it prior to submitting its supplemental brief.

Plaintiff's arguments that Mr. Giorgio replied "I don't know" or "I don't remember" to obstruct the deposition are similarly misplaced. Mr. Giorgio's deposition lasted nearly five hours

---

[15] Spa-Defense is a small company and this litigation has had considerable effect on its business. See Ex. 1 at 148-149, 162.

and included approximately 760 questions.[16]  Even if plaintiff's unsupported statement that 100

questions resulted in that response, that is less than 14%.  Moreover, plaintiff sought a personal

deposition, not a corporate designee – so it should not be surprised if it did not find a witness that

had personal knowledge of every question posed by plaintiff's counsel.  Given that the only a few

possible contacts between Spa-Defense and Rhode Island might have been nearly a decade ago, if

not at all, plaintiff should not have been surprised by this result.  Regardless, the fact that a

witness did not know or remember a small fraction of the information asked simply cannot

amount to obstructionism.[17]  To find otherwise confounds reason.

Plaintiff seemingly believes that "information concerning the Amendment prompted the

jurisdictional discovery."  DE 21 at 23-24.  That position is inconsistent with DE 12, however, in

which the Court stated that "the determination of the instant Motion" depends upon "whether or

not Spa-Defense does business in Rhode Island."  DE 12 at 3 n.1.  That may be why plaintiff

ignores DE 12 on this proposition.

Finally, had plaintiff actually believed Spa-Defense improperly withheld discovery, it

should have moved to compel that discovery.  See Fed.R.Civ.P. 37.  In fact, on April 23, 2010,

plaintiff sent an email threatening an "emergency motion to compel" on this very basis.  Ex. 8

(4/23/10 email at bottom of string).  On April 27, 2010, Spa-Defense responded, setting forth its

relevance position, identifying relevant authority, and demanding plaintiff identify any contrary

authority.  Ex. 9.  Plaintiff neither responded to Spa-Defense's letter nor identified any authority

for its position in its brief.  Nor did plaintiff move to compel the information.  Having failed to

_____

[16] Spa-Defense will submit a copy of the entire transcript at the Court's request or bring it to the hearing
should plaintiff disagree with this calculation.

[17] Notably, plaintiff only includes attorney argument directed at the alleged obstruction – no evidence
supports that position.

move to compel this production or even complete a Rule 37 conference, plaintiff should not now be heard to request any relief for the allegedly withheld discovery.

### 7. *Conclusion On Specific Jurisdiction*

Specific jurisdiction was not contemplated by DE 12. If the Court considers plaintiff's re-arguments, plaintiff has not proved this Court has specific jurisdiction over Spa-Defense by a preponderance of the evidence. Even if plaintiff's alleged contacts had been proved, they had nothing to do with the accused products at issue or activities purposefully directed at residents of the forum. Further, the identified activities are the result of unilateral activities of other entities (namely, plaintiff or a defendant in another case brought by plaintiff) that cannot confer jurisdiction. Finally, each of plaintiff's six alleged but irrelevant or non-probative specific jurisdiction items contravenes precedent or persuasive authority. And since no discovery misconduct is alleged as to general jurisdiction and none exists as to specific jurisdiction, no "estoppel" can be appropriate.

## <u>CONCLUSION</u>

For the foregoing reasons and those previously set forth by SPA-Defense in its Memorandum in Support of its Motion to Dismiss (DE 7) and Reply (DE 11), Emissive's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

Dated: May 11, 2010

Defendant, Spa-Simrad, Inc.,
by its Attorneys,

s/ Jason R. Buratti
Jason R. Buratti, Esquire (*pro hac vice*)
Christopher & Weisberg, P.A.
200 E. Las Olas Blvd., Ste. 2040
Fort Lauderdale, Florida 33301
Tele No. (954) 828-1488

Fax No.  (954) 828-9122
Jburatti@cwiplaw.com

/s Harris K. Weiner_____
Harris K. Weiner, Esq. (#3779)
Salter McGowan Sylvia & Leonard, Inc.
321 South Main Street, Suite 301
Providence, Rhode Island 02903
Office: (401) 274-0300
Fax:     (401) 453-0073
hweiner@smsllaw.com

**Certification**

I hereby certify that a copy of the within Stipulation was delivered electronically to Craig M.

Scott, Esq., and Christine K. Bush, Esq., Scott & Bush, Ltd., 30 Kennedy Plaza, 4th Floor,

Providence, RI 02903 on this 13th day of May, 2010.

/s/Harris K. Weiner

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the forgoing is being filed electronically with the Clerk of the

Court for the U.S. District Court of Rhode Island, using the ECF system.

Respectfully submitted,

/s/ Harris K. Weiner
Harris K. Weiner, Esq.
Salter McGowan Sylvia & Leonard, Inc.
321 South Main Street, Suite 301
Providence, Rhode Island 02903
Office: (401) 274-0300
Fax:    (401) 453-0073
E-mail: hweiner@smsllaw.com

*Counsel for Defendant*

Date: May 13, 2010

<u>**SERVICE LIST**</u>

Emissive Energy Corporation *v.* SPA-Simrad, Inc.

Case No. 1:09-cv-00567-S-DLM

United States District Court, District of Rhode Island

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Thomas Connolly, Esq.
SCOTT & BUSH LTD
30 Kennedy Plaza, 4th Floor
Providence, Rhode Island 02903
Telephone:  401-865-6035
Facsimile:  401-865-6039
*Attorney for Plaintiff*
Service by CM/ECF electronic filing notice to:
cscott@scottbushlaw.com
cbush@scottbushlaw.com