UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

————————————————————————————)
                                          )
EMISSIVE ENERGY CORPORATION,              )
                                          )
        Plaintiff,                        )
                                          )
    v.                                    )    Civil No. 09-567 S
                                          )
SPA-SIMRAD, INC.,                         )
                                          )
        Defendant.                        )
————————————————————————————)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, United States District Judge.

    Before the Court is Plaintiff Emissive Energy Corporation's

("Emissive") objection to Magistrate Judge David L. Martin's

September 24, 2010 Report and Recommendation ("R&R"),

recommending that Defendant SPA-Simrad, Inc.'s ("SPA") 12(b)(2)

motion to dismiss for lack of personal jurisdiction be granted.

    In considering an objection to an R&R, the Court conducts

"a de novo determination of those portions of the [R&R] to which

objection is made" and "may accept, reject, or modify, in whole

or in part, the findings or recommendations made by the

magistrate judge." 28 U.S.C. § 636(b)(1) (2009); see Jasty v.

Wright Med. Tech., Inc., 528 F.3d 28, 33 (1st Cir. 2008). The

Court adopts the R&R pursuant to 28 U.S.C. § 636(b)(1), except

as modified below.

The relevant facts, procedural background, and analysis are fully set forth in the R&R. The Court limits its discussion to and presents only those facts pertinent to Plaintiff's objections.

I.   Applicable Standard

Emissive objects to the preponderance of the evidence standard employed by Magistrate Judge Martin in the R&R, asserting that Federal Circuit law[1] requires a plaintiff to make only a prima facie showing of personal jurisdiction where a district court does not hold an evidentiary hearing on a 12(b)(2) motion to dismiss. SPA counters that the prima facie standard is required only in the absence of discovery, which occurred here, not in the absence of an evidentiary hearing.

On March 8, 2010, Magistrate Judge Martin issued a Notice and Order ("Notice and Order") ordering jurisdictional discovery and notifying the parties that he would apply the preponderance of the evidence standard (instead of the less onerous prima facie standard) in determining whether this Court should exercise personal jurisdiction over SPA. Mistakenly relying on First Circuit law, Magistrate Judge Martin opted for the heightened standard after the parties presented conflicting

---

[1] Because this is a patent infringement action, Federal Circuit law controls. Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1348 (Fed. Cir. 2002); Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

jurisdictional evidence regarding Defendant's business activities in Rhode Island.[2]

SPA is correct that, absent discovery, a "plaintiff[] need only make a prima facie showing of jurisdiction." Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1231 (Fed. Cir. 2010). However, the Federal Circuit has also enunciated that where jurisdictional facts are in dispute, a district court must hold an evidentiary hearing in order to impose the heightened preponderance standard. See Campbell Pet Co. v. Miale 542 F.3d 879, 888 (Fed. Cir. 2008) ("Where, as here, the district court did not hold an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction to survive the motion to dismiss.") (citations and quotation marks omitted); Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003) ("[W]here the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction.").

---

[2] The conflicting evidence at issue involved inconsistent statements made by SPA's president. During deposition testimony in Emissive Energy Corp. v. NovaTac, Inc., C.A. No. 09-13 (D.R.I.), a related case, he testified that the SPA sells products and provides services in every state. However, in affidavits filed in this case, he explained that he meant products were available for purchase throughout the entire United States, and that SPA has never sold the allegedly infringing goods in Rhode Island.

Nevertheless, Magistrate Judge Martin's Notice and Order made clear and gave ample notice to the parties that he would employ the preponderance standard in deciding the motion to dismiss. Emissive, however, "did not seek reconsideration of this determination, nor did it take an appeal from the Notice and Order." (R&R at 13.) The R&R thus properly deemed the issue waived. See Fed. R. Civ. P. 72(a) ("A party may serve and file objections to [a magistrate judge's nondispositive order] within 14 days after being served with a copy."); Cf. Espeaignnette v. Gene Tierney Co., 43 F.3d 1, 9 (1st Cir. 1994) ("Normally . . . failure to argue the correct applicable standard would effect a waiver of the issue."); Pieczenik v. Dyax Corp., 265 F.3d 1329, 1334 (Fed. Cir. 2001) (applying the preponderance standard after the parties informed the court that an evidentiary hearing was unnecessary).[3]

II. Personal Jurisdiction

Plaintiff also objects to Magistrate Judge Martin's determination that the Court lacks personal jurisdiction over Defendant. The R&R ably sets forth the analytical backdrop of the Supreme Court's personal jurisdiction jurisprudence; however, a brief recitation will help inform the present analysis.

---

[3] Notably, the Court shares Magistrate Judge Martin's conclusion that construing the conflicting evidence in Plaintiff's favor would not alter the result here.

4

In the Federal Circuit, "[d]etermining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1329 (Fed. Cir. 2008) (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001). Because Rhode Island's long arm statute authorizes assertion of personal jurisdiction to the fullest extent permitted by the United States Constitution, Women & Infants Hosp. of R.I. v. Cmty. Health Network of Conn., Inc., 394 F. Supp. 2d 488, 491 (D.R.I. 2005) (citing Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990)), the question becomes whether asserting personal jurisdiction over Defendant is consistent with the Due Process Clause. Brian Jackson & Co. v. Eximas Pharm. Corp., 248 F. Supp. 2d 31, 35 (D.R.I. 2003). "[T]he ultimate inquiry turns on whether there are sufficient contacts between [defendant] and the State of Rhode Island." Central Tools, Inc. v. Mitutoyo Corp., 381 F. Supp. 2d 71, 74 (D.R.I. 2005) (citing Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 427 (Fed. Cir. 1996)).

Due process is satisfied where a court has general or specific jurisdiction over a defendant. See Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1017 (Fed. Cir. 2009).

The Federal Circuit has held "in the context of patent infringement litigation that an assertion of general jurisdiction requires that the defendant have continuous and systematic contacts with the forum state, and that such activity will confer general personal jurisdiction even when the cause of action has no relationship with those contacts." Avocent, 552 F.3d at 1331-32 (internal citation and quotation marks omitted). Specific jurisdiction is satisfied where: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." Id. at 1332 (quoting Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006)).

A. General Jurisdiction

Emissive tenders the following as evidence of this Court's general jurisdiction over SPA: (1) SPA's website, which lists and describes (but does not sell online) company products, and which contains contact information for officials in all fifty states with the power to authorize grants for purchasing SPA products; (2) SPA's issuance of four price quotations between 2002 and 2003 to three Rhode Island police departments (for sales that were never consummated); and (3) SPA's president's deposition testimony in a related action that the company "sells products" and "provides training services" in "every state."

(P's Obj. to R&R, Ex. 1.) SPA later controverted this testimony by submitting an affidavit by its president explaining that he meant SPA products were available for purchase throughout the entire United States. See supra note 4.

Even construing SPA's president's testimony in Emissive's favor, these allegations do not suggest that SPA ever consummated a single sale or other business transaction in Rhode Island. Indeed, if such evidence existed, it would have emerged in the jurisdictional discovery conducted in this case. As such, Emissive's evidence of SPA's activities in this forum is a far cry from demonstrating the "continuous and systematic general business contacts" needed to support general jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984) (finding the defendant's CEO's business trip to forum, acceptance of checks drawn on forum bank, and purchases of equipment from forum manufacturer insufficient to establish general jurisdiction); see also Campbell Pet, 542 F.3d at 884 (finding the defendant's 12 in-forum sales within 8 years and its website that generated no in-forum sales insufficient to establish general jurisdiction).

B. Specific Jurisdiction

Emissive has maintained throughout these proceedings that SPA is subject to the Court's specific jurisdiction under the so-called "effects" test of Calder v. Jones. 465 U.S. 783

(1984).  It therefore strongly objects to the R&R for reaching a contrary conclusion without consideration of that decision.  In light of the potential applicability of <u>Calder</u> to the present matter, the Court will reexamine, from scratch, whether specific jurisdiction over SPA is warranted.  The Court proceeds mindful, however, that "[t]he effects test does not supplant the minimum contacts analysis, but rather informs it."  <u>Consulting Eng'rs Corp. v. Geometric Ltd.</u>, 561 F.3d 273, 280 (4th Cir. 2009).

To begin, the R&R correctly notes that in the ordinary patent infringement suit, specific jurisdiction typically depends on the sale of the infringing products or services in the forum.  <u>Avocent</u>, 552 F.3d at 1332.  The ordinary patent infringement suit is one where "the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in the suit."  <u>Id.</u>  Applying the law of <u>Avocent</u>, the R&R properly determined that the present case fits squarely within this definition and, as a consequence, the Court lacks specific jurisdiction over SPA because there is no evidence that it ever sold the allegedly infringing products (the "Accused Products") or related services in Rhode Island.

Emissive retorts that the <u>Avocent</u> ordinary infringement analysis is not dispositive of whether this Court can exercise

specific jurisdiction over SPA. It argues that specific jurisdiction is not foreclosed simply because a defendant does not sell products or offer services in the forum state. The Court agrees. In Beverly Hills Fan Co. v. Royal Sovereign Corp., an ordinary infringement action, even though the defendant had no direct sales or other contacts in the forum, the Federal Circuit found specific jurisdiction because the defendant shipped products through an "established distribution channel," and thus "deliver[ed] its products into the stream of commerce with the expectation that they [would] be purchased by consumers in the forum State." 21 F.3d 1558, 1565-66 (Fed. Cir. 1994) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298 (1980)).

But here, as there is no evidence that the Accused Products ever reached Rhode Island, or would reach Rhode Island, Emissive conceded at the hearing on its objection that it cannot rest its jurisdictional allegations on a "stream of commerce" analysis. (Hr'g on Pl.'s Obj. to R&R, Feb. 1, 2011.) Instead, Emissive relies on Calder, which holds that specific jurisdiction may be based solely on the in-forum effects of a defendant's extra-forum conduct. The Federal Circuit has recognized Calder as an "independent basis for personal jurisdiction" separate from the stream of commerce analysis. Avocent, 552 F.3d at 1340.

Emissive points to two SPA contacts which, it argues, take this case outside the ordinary patent infringement framework and warrant the application of Calder: (1) SPA's website and (2) SPA's March 17, 2009 amended sales contract with NovaTac, the manufacturer of the Accused Products. The contract contained an indemnity provision (the "Indemnity Agreement") and was executed only a few days after Emissive brought a Rhode Island patent infringement suit against NovaTac. The Indemnity Agreement provided for NovaTac to indemnify SPA for losses suffered in any action brought by Emissive as a result of selling the Accused Products it purchased from NovaTac.[4] These two extra-forum activities, Emissive argues, have had a detrimental economic effect on Emissive in Rhode Island and therefore subject SPA to specific jurisdiction in the State under the Calder "effects" test.

Calder found jurisdiction where the defendants' "[1] intentional, and allegedly tortious, actions [2] were expressly aimed at the forum, [3] and they knew [they] would have a potentially devastating impact there." Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1204 (Fed. Cir. 2003) (quoting Calder, 465 U.S. at 789) (internal quotation marks omitted). As explicated by the Federal Circuit:

---

[4] The facts surrounding the Indemnity Agreement are recounted in further detail in the R&R.

10

In *Calder*, the Supreme Court held that the author and editor of an allegedly libelous article circulated in California, albeit written and edited in Florida, which they knew would have a potentially devastating impact upon [the plaintiff], and which targeted a resident of California, was not mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California, and thus they must reasonably anticipate being haled into court there.

*Avocent Huntsville*, 552 F.3d at 1331 (citations and quotation marks omitted).

While *Calder* clearly applies to libel actions, courts have diverged over to what extent it applies to other types of intentional torts. *See, e.g.*, *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 624 (1st Cir. 2001) ("[C]ourts have struggled somewhat with *Calder*'s import. As we have previously noted, *Calder*'s 'effects' test was specifically designed for use in a defamation case. Thus, whether *Calder* was ever intended to apply to numerous other torts, such as conversion or breach of contract, is unclear.") (citations and quotation marks omitted); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260-61 (3d Cir. 1998) (discussing the "mixture of broad and narrow interpretations" courts have adopted in applying the "effects" test to non-defamation cases, and concluding that *Calder* may "enhance otherwise insufficient contacts with the forum"); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (extending *Calder* further than any other circuit by holding in a

copyright case that personal jurisdiction exists wherever the plaintiff is injured).

The Federal Circuit has only employed _Calder_ (with somewhat mixed results) in the context of suits for declaratory judgment of non-infringement in order to assess whether a defendant patentee's efforts to enforce its patent subjected it to jurisdiction in the plaintiff's chosen forum. _See, e.g._, _Avocent_, 552 F.3d at 1324 (applying _Calder_ to conclude that defendant patentee's act of sending four infringement letters to plaintiff in Alabama, without more, did not subject defendant to specific jurisdiction in Alabama, even though defendant patentee sold products in Alabama); _Silent Drive_, 326 F.3d 1194 (applying _Calder_ to find defendant patentee subject to personal jurisdiction in Iowa based on obtaining a Texas injunction against the Iowa plaintiff); _Akro Corp. v. Luker_, 45 F.3d 1541 (Fed. Cir. 1995) (discussing _Calder_ in finding personal jurisdiction where defendant patentee sent infringement letters to forum and entered into exclusive licensing agreement with plaintiff's in-forum competition).

Although the Federal Circuit has yet to apply the "effects" test in an ordinary patent infringement suit, it has endorsed a broad application of personal jurisdiction under _Calder_. In _Silent Drive_, the Federal Circuit found _Calder_ satisfied by the defendant patentee's act of obtaining an out-of-state injunction

12

that would affect the plaintiff's business interests in the forum state. 326 F.3d at 1205-06. The court held that it did not matter that securing an injunction is not a tort because "Calder is not limited to torts but rather encompasses all cases in which 'the brunt of the harm . . . was suffered in' the forum, and the forum 'is the focal point both of the' defendant's actions 'and of the harm suffered.'" Id. at 1205 n.4 (quoting Calder, 465 U.S. at 788-89). Moreover, numerous district courts have employed Calder in ordinary infringement actions. See, e.g., Amini Innovation Corp. v. JS Imports Inc., 497 F. Supp. 2d 1093 (C.D. Cal. 2007) (applying Calder in copyright/patent infringement action); Kowalski v. Integral Seafood LLC, CV. No. 06-00182 BMK, 2006 WL 3313815 (D. Haw. Nov. 14, 2006) (applying Ninth Circuit's Calder "effects" test in patent infringement suit due to dearth of analysis in the Federal Circuit); Xactware, Inc. v. Symbility Solution Inc., 402 F. Supp. 2d 1359 (D. Utah 2005) (applying Calder in ordinary patent infringement action); Visual Sec. Concepts, Inc. v. KTV, Inc., 102 F. Supp. 2d 601 (E.D. Pa. 2000) (applying Calder in ordinary patent infringement action).

The Court therefore holds that an "effects" test analysis is applicable to the present scenario, where Plaintiff asserts in-forum personal jurisdiction over Defendant based on allegations that Defendant's extra-forum activities (namely, a

website and Indemnity Agreement) have had an adverse in-forum economic effect on the plaintiff. Given the lack of Federal Circuit law applying <u>Calder</u> in ordinary infringement cases, the Court can certainly understand Magistrate Judge Martin's reluctance to do so. Notably, however, even under the "effects" test, SPA still remains outside this Court's jurisdiction.

    1.   Purposeful Direction

The specific jurisdiction inquiry begins with whether SPA purposefully directed its activities at residents of this forum. <u>Nuance Commc'ns</u>, 626 F.3d at 1231. The Court turns first to SPA's website. At the hearing on its objection, Emissive for the first time argued that the present case is indistinguishable from a Massachusetts District Court copyright case, <u>Edvisors Network, Inc. v. Educ. Advisors, Inc.</u>, Civil Action No. 10-10347-PBS, 2010 WL 5115752, at *8-10 (D. Mass. Nov. 30, 2010).[5]

---

[5] The present case is immediately distinguishable from <u>Edvisors</u> on the basis that the latter involved trademark infringement, which is not governed under First Circuit not Federal Circuit law. However, in assessing personal jurisdiction, the Federal Circuit routinely cites to authority in intellectual property cases not involving patents. <u>See, e.g.</u>, <u>Silent Drive, Inc. v. Strong Indus., Inc.</u>, 326 F.3d 1194, 1205-06 (Fed. Cir. 2003) (considering copyright and trademark infringement authorities from the Seventh, Eighth and Ninth Circuits); <u>Beverly Hills Fan Co. v. Royal Sovereign Corp.</u>, 21 F.3d 1558, 1571 (Fed. Cir. 1994) ("Additionally, a focus on the place where the infringing sales are made is consistent with other areas of intellectual property law – it brings patent infringement actions into line with the rule applied in trademark and copyright cases.").

In Edvisors, the court considered whether specific jurisdiction was warranted where the defendant's sole contact with Massachusetts was a website strikingly similar to SPA's.[6]  The Court found specific jurisdiction under Calder because defendant 1) had "market[ed] its services to residents of Massachusetts through the use of an interactive website" and 2) had "knowledge that any allegedly infringing conduct would have an especially harmful effect on [the plaintiff]."  Id. at *9.

While Edvisors suggests that a defendant's act of marketing its services nationwide (via a website) coupled with its knowledge of a potential injurious effect in plaintiff's forum state is sufficient to satisfy Calder, other courts have rejected such a broad application.  For instance, the Ninth Circuit finds Calder satisfied only when there is "individualized targeting" by the defendant.  Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082 (9th Cir. 2000) (finding this requirement satisfied by defendant's act of sending infringement letter to plaintiff forum).  The Third Circuit has said that "[t]he defendant must manifest behavior

_____

[6] Both websites describe company products and services and list contact information for customer inquiries, but do not provide for online sales.  Moreover, just as SPA's website lists contact information for officials in all fifty states with the power to authorize grants for purchasing SPA products, the Edvisors website provided contact information for accreditation agencies in various states (as the defendant was an accreditation consultant), including Massachusetts, in an apparent effort to generate online business.

15

intentionally targeted at and focused on the forum for <u>Calder</u> to be satisfied." <u>IMO Indus.</u>, 155 F.3d at 265 (internal citation and quotation marks omitted). Even the Seventh Circuit recently retreated from its expansive holding in <u>Janmark</u>, discussed <u>supra</u>, that personal jurisdiction exists wherever the plaintiff is injured. <u>Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.</u>, 623 F.3d 440, 445-46 (7th Cir. 2010) ("[W]e did not discuss whether the defendants in [<u>Janmark</u>] had expressly aimed their conduct at the forum state . . . but 'express aiming' remains the crucial requirement when a plaintiff seeks to establish personal jurisdiction under <u>Calder</u>.").

These holdings are entirely consistent with the non-<u>Calder</u> specific jurisdiction jurisprudence of the Federal Circuit, First Circuit, and this Court, where the relevant "contacts" involve a website. <u>See, e.g.</u>, <u>Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.</u>, 395 F.3d 1275 (Fed. Cir. 2005) ("The difficulty is that [defendant's] website is not directed at customers in the District of Columbia, but instead is available to all customers throughout the country who have access to the Internet. Thus, the ability of District residents to access the defendants' websites . . . does not by itself show any persistent course of conduct by the defendants in the District.") (internal citation and quotation marks omitted);

Subsalve USA Corp. v. Watson Mfg., Inc., 392 F. Supp. 2d 221, 223 (D.R.I. 2005) ("It is well settled, however, that '[t]he mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible.'") (quoting McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir. 2005)); Emissive Energy Corp. v. Innovage Inc., C.A. No. 06-401 S, 2007 WL 2907869, at *3 (D.R.I. Oct. 3, 2007) (holding in a patent case that "the availability of Defendant's interactive website to Rhode Island residents is not sufficient by itself to support a finding of purposeful availment").

The Court therefore declines to adopt the holding in Edvisors. SPA's website does not, by itself, satisfy the express aiming requirement of the Calder test, even if SPA knew that advertising the Accused Products on the website might harm Emissive's economic interests. Nothing about the website suggests that it targets or is intentionally aimed at Emissive or Rhode Island: it does not provide for online sales transactions; the state grant information page lists Rhode Island as one among the fifty states; and there is no evidence that web-based inquiries have ever led to any sales in Rhode Island.[7] Therefore, Calder does not buttress a finding that,

---

[7] Moreover, even if web-based inquiries have led to sales of the Accused Products outside of Rhode Island, this too would not

through its website, SPA purposefully directed its activities toward Rhode Island.

The Court now turns to whether SPA's Indemnity Agreement with Novatac subjects it to specific jurisdiction under Calder. Emissive argues that by negotiating an agreement designed to avoid liability in Rhode Island, SPA can sell the infringing products with impunity, and therefore is knowingly causing a detrimental economic effect on Emissive in Rhode Island. Emissive concludes that "[b]y entering into a contract specifically directed towards litigation in this Court [i.e., Emissive's underlying infringement suit against NovaTac] for the purpose of continuing to benefit commercially from the sale of products that it knew were the subject of Emissive's patents, SPA has purposely availed itself of the benefits and protections of the laws of Rhode Island, and it was foreseeable that SPA would be hailed [sic] into this Court." (Pl.'s Obj. 6-7.)

The Emissive/NovaTac infringement action may have served as a "catalyst" for the indemnity agreement, (R&R 26), thereby satisfying Calder's requirement that the defendant "knew that the brunt of that injury would be felt by [the plaintiff] in the

---

satisfy Calder.  See Kowalski v. Integral Seafood LLC, CV. No. 06-00182 BMK, 2006 WL 3313815, at *3 (D. Haw. Nov. 14, 2006) (holding under Calder that the purpose of defendant's out-of-forum sales of infringing product was not to cause "a detrimental effect on the forum plaintiff [but] just to sell products").

State" (if the alleged infringement can even be said to be an injury). 465 U.S. at 789-90. Regardless, mere foreseeability of harm is not enough to establish personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) ("foreseeability of causing injury in another State . . . is not a 'sufficient benchmark' for exercising personal jurisdiction") (footnote, emphasis, and citation omitted).

The situation in Calder has been likened to a "gunman firing across a state line." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 208 (1st. Cir. 1994). But the Indemnity Agreement is no such shot; it is defensive in nature. At bottom, the Indemnity Agreement is simply a private contract executed in California between a Delaware corporation located in California (i.e., NovaTac), and a Florida-based corporation which sells nothing in Rhode Island (i.e, SPA). It was executed after the infringement suit to protect SPA from liability everywhere – be it Florida (SPA's home-state), Virginia (where SPA has sold the Accused Products), or any other jurisdiction. (R&R at 31.) As such, the Indemnity Agreement cannot be said to be expressly aimed at this state.

This conclusion jibes with the applicable Federal Circuit law. In Silent Drive, the Court applied Calder to find defendant's act of obtaining a Texas injunction against the Iowa plaintiff sufficient to confer specific jurisdiction because an

19

injunction is "designed to operate primarily in the forum." 326
F.3d at 1206. Similarly, in Akro, the Federal Circuit cited
Calder to exercise personal jurisdiction where defendant
patentee entered into an exclusive in-forum licensing agreement
with a competitor in plaintiff's forum state. 45 F.3d at 1547.
The court found it determinative that that the case "involve[d]
an additional activity aimed at the forum state-namely, the
patentee's exclusive licensing of one of the accused infringer's
competitors within the forum state." Id. at 1548.

In sum, despite Plaintiff's assertions to the contrary, the
Calder "effects" test fails to provide an alternative framework
for rejecting the R&R's conclusion that SPA did not purposefully
direct its activities toward Rhode Island. Here, there is no
indication that Defendant's website and Indemnity Agreement were
expressly aimed, as required under Calder, toward Plaintiff
and/or Rhode Island such that the Defendant purposefully
directed its activities toward this forum. See Burger King, 471
U.S. at 475 (holding that purposeful direction "ensures that a
defendant will not be haled into a jurisdiction solely as a
result of random, fortuitous, or attenuated contacts, or of the
unilateral activity of another party or a third person")
(internal quotation marks and citations omitted).

2.    Relatedness and Reasonableness

Because Plaintiff has failed to demonstrate that Defendant purposefully directed its activities toward this forum, the Court need not analyze the second and third prongs of the personal jurisdiction test.  <u>Avocent</u>, 552 F.3d at 1332.

III. Compliance with Jurisdictional Discovery

Plaintiff's final objection to the R&R is that it erred by refusing to estop Defendant from contesting personal jurisdiction for failing to comply with discovery requests.  For the reasons set forth in the R&R, the Court finds this objection unavailing.

IV.  Conclusion

For the reasons set forth above, Plaintiff's Objection to the R&R is DENIED and Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED.


IT IS SO ORDERED.


*/s/ William E. Smith*
William E. Smith
United State District Judge
Date: April 13, 2011